## BROOKS and BROWN *vs.* MALTBIE.

1. Where a declaration is filed against two defendants, only one of whom appears and pleads, and there is a regular continuance against each, at every term, down to the rendition of verdict and judgment against both; no discontinuance can be held to have operated.
2. In cases, where judgment and verdict are rendered against two defendants, (only one having appeared and plead to the action,) it is not error, to have omitted the entry of judgment by default, against that defendant not appearing and pleading.
3. Under a plea to an action, upon a promissory note, that the note had been discharged by the execution of a deed of trust of real estate, made by the defendant; parol proof is not admissible, to show, that, at the time the deed was executed, it was agreed that it should operate as an extinguishment of the note sued on.

James R. Maltbie declared, in the action of assumpsit, in Jefferson Circuit Court, against the plaintiffs in error, upon a promissory note, executed by them, (jointly and severally,) to the plaintiff.

The writ was executed upon both of the defendants. But Brooks neither appeared, nor plead to the action. The defendant, Brown, plead: first—non-assumpsit; secondly—a special plea, averring, that he subscribed the note, sued on, only as the surety of Brooks, without any consideration, whatever; that, some time after the execution of said note, to wit, on the 20th day of February, A. D. 1826, the said Maltbie agreed with said defendant, Brown, that if the latter would execute a deed of trust of certain real estate, situate in the town of Elyton, in the said County of Jefferson, the said deed should be held to operate as a discharge of the said promissory note, and of the responsibility of the defendant thereon:

and, the defendant averred, that in pursuance of this agreement, he did, on the 20th day of February, 1826, execute his certain deed of trust of the estate in question. to one Thompson, as trustee, for the benefit of said plaintiff, to secure him, in the payment of the said sum of money, specified in the said promissory note : and, all of which, the said defendant averred, would more fully appear, by referrence to the said deed, of record.    That subsequently, the said estate, so conveyed, as aforesaid, was sold, by the said trustee, and the entire proceeds appropriated for the benefit of the plaintiff.    And the defendant further averred, that the said lot of land, so conveyed, as aforesaid, was worth, at the time conveyed, a much larger amount of money, than the whole amount of the said promissory note, and all interest due thereon.

To this plea, the plaintiff filed a replication, in short, denying the facts averred, and taking issue to the country ; and a jury came, who rendered a verdict in favor of the plaintiff, for the amount due on the note.

In the progress of the trial, a bill of exceptions was taken, by which it appeared, that Brown, the defendant, in support of his special plea, offered evidence, to establish the facts, that he was the surety of his co-defendant, and had signed the note, as such; and that the agreement to execute the deed of trust, in discharge of the note, as averred in his plea, was made, between himself and the defendant.    He then produced the deed, executed in pursuance of said agreement, which specified—that whereas, said Brown, being justly indebted to said Maltbie, in the

the amount of the before mentioned promissory note; which debt the said Brown was desirous of securing to the said Maltbie—and have paid according to the legal effect thereof: therefore, it witnessed, that, in consideration of the promises, and also, in further consideration of one dollar, he, the said Brown, gave, granted, bargained and sold, aliened, enfeoffed, released and confirmed, unto the said Thompson, his heirs and assigns, forever, certain lands, lying, situate, and being in the town of Elyton, in the County of Jefferson; to have and to hold, to the said Thompson, upon the express trust and condition, that the said Brown should remain in possession of the said lands, until default, should be made in the payment of the said promissory note : and, in default of the payment, then the said trustee should sell the said lands, and apply the proceeds thereof, to the discharge of the amount of the promissory note aforesaid.

In reference to this deed, the Court was requested to exclude the parol evidence, offered by the defendant, of the agreement under which it was executed; on the ground, that such testimony was inconsistent with the terms of the deed : and the Court did exclude it; because, as was expressed, the proof offered, tended to prove a verbal contract, made simultaneously with the execution of the deed : and because it controlled the legal effect of the deed, which was only, by its terms, intended to secure a debt, to the value of the property conveyed.

The defendant, therefore, took a writ of error, and removed the cause into this Court.

*Ellis*, for the plaintiffs in error, contended—
First—That there was error, in the Court below

rendering a joint-judgment against both defendants. Brown, one of the defendants, plead separately; and the only issue was upon the two pleas of that defendant. A verdict was generally, however, rendered against both defendants, which was error.—17 John. R. 270; 1 Stewart, 189; 1 Dunlap's P. 570.

The record shows no appearance, by Brooks.— Brooks had a right to admit a cause of action, without incurring costs; and surely Brown had the same right to a legal defence, without any prejudice from the course of his co-defendant.

Secondly—There was error, in rejecting the parol proof of the contract, under which the deed had been executed. Even if the plea were insufficient and defective, as a bar, yet, the truth of it, only, was before the jury. But, it was not a *verbal* contract, made simultaneously with the deed: the deed was made *in execution* of the *parol* agreement. Here its intent was to secure the debt; and the effect of the evidence, would have been to show, that the debt had not only been secured, but paid. The plea alleges, that the property conveyed by the deed, was sold by the trustee; and the question, whether the property so conveyed and sold, was to secure the payment of the note, and discharge the responsibility of Brown, was one for the jury.—3 Stark. Ev. 1047–8, 1054, note 1; Chitty on Con. 26. The deed was a mere consummation of the contract.—12 East. 578; 15 Mass. R. 85.

Whether the contract be collateral, or not, is to be determined by the jury.—9 Johns. R. 309.

*Peck*, contra. — Upon the first point—the inference from the record is, that Brooks did appear.—

The record recites, that the "*parties* came by their attornies."---*Castleberry* vs. *Pearce*, 2 Stewart & Porter, 141.

Secondly.----The effect of the parol proof, was in contradiction of the deed. The deed does not show that it was to operate in discharge of the note; but to secure its payment; yet, the evidence is to show, that a verbal contract existed, by which the deed was to discharge Brown's responsibility, in respect to the note. To show, not what the deed purports, but what it does *not* purport. That it was not, as its terms declare, to secure the payment of the note, but to *discharge* the note. The deed expresses itself thus—*If the note be paid, the deed is void;* but there is no term, by which it can be inferred, that the deed was to operate as a discharge of the note. The evidence was, therefore, improper.---17 Mass. R. 571; 1 Johns. R. 476 ; 2 Caine's R. 160 ; 1 Taunt. 115; 1 Caine's R. 358, note; Ala. R. 251, 270; 1 Stewart, 425.

TAYLOR, J.—At March term 1829, of the Circuit Court of Jefferson county, the declaration was filed in assumpsit, upon a promissory note; at the same term, Brown, one of the defendants, filed two pleas, first, the general issue: his second plea was as follows, viz—" and for further plea in this behalf, the said defendant saith, *actio non*, &c. because he says that he, the said defendant, subscribed said promissory note above stated and set forth in said plaintiff's declaration, only as the security of the said Jacob W. Brooks, his co-defendant, without any consideration whatever moving from the said plaintiff, to this defendant. That some time after the execu-

tion of said promissory note, as aforesaid, that is to say, on the 20th day of February, 1826, in the county aforesaid, the said plaintiff agreed with said defendant, that if he, said defendant, would execute a deed in trust for the benefit of said plaintiff, upon certain real estate in the town of Elyton, the same should operate as a full discharge to him, said defendant, on account of said promissory note; and the said defendant further averring, saith, in pursuance of said agreement so made, as aforesaid, he, the said defendant, did, on the 20th day of February aforesaid, at &c., aforesaid, execute his certain deed in trust to one James Thompson, as trustee, for the benefit of said plaintiff, to secure to said plaintiff the payment of one thousand four hundred and forty-four dollars and seventy cents, the amount of said promissory note; all of which will fully appear by reference to said deed, now remaining of record, in the Clerk's office of the county Court for Jefferson county; by which said deed, (and in pursuance of said agreement so made as aforesaid) he, said defendant, did convey, as aforesaid, a certain lot of ground situate in the town of Elyton, and known in the general plan of said town by its number —; upon which said lot, is situate a large tenement of wood, usually occupied as a tavern, which said lot was afterwards, to wit, on the 1st Monday in July, 1828, sold at public auction by said trustee, in virtue of said deed, and the whole proceeds of said sale applied to the use and benefit of said plaintiff; and the said defendant avers, that said lot of land so conveyed, &c., was at the time of said conveyance worth a much larger sum of money than the whole amount

of said promissory note, together with all the interest due thereon," &c.

An issue was formed upon both the pleas; after which is the following entry—"and this cause being continued from term to term until the term first aforesaid," (April term 1831) "came the parties, by their attorneys, and thereupon came a jury of good and lawful men, who being elected, tried, and sworn the truth to speak upon the issue joined, upon their oaths do say, we the jury find for the plaintiff and assess his damages, by reason of the premises, to sixteen hundred and fifty-nine dollars. Therefore it is considered by the Court, that the said plaintiff recover against the *defendants* the sum of sixteen hundred and fifty-nine dollars damages aforesaid by the jury in their verdict, in manner and form aforesaid assessed, besides his costs," &c.

No judgment, by default, was rendered against the defendant, Brooks; nor was there any proceedings against him individually.

The first objection taken by the plaintiffs in error, is, that the suit was discontinued, as to Brooks, which worked a discontinuance of the action; or, if this were not the case, that there was error in not rendering a judgment by default, against Brooks.

It is useless to enter upon a minute investigation of the common law, upon the doctrine of discontinuances: with us it is certain, that no suit can be discontinued, while some step is taken against each of the defendants, at every term. Much of the practice of the Courts of Kings Bench or of the common pleas, has never been introduced into our Courts: we know nothing of special imparlances, and many other formalities of those Courts; but the practice

and pleadings have, with us, been greatly simplified. In this case, the declaration was filed at the term to which the writ was returned against both defendants, and at each succeeding term, down to the one at which the final judgment was rendered, the cause was regularly continued. There was, therefore, no discontinuance.

Nor can I believe, there was such an error, in not entering a judgment by default, against Brooks, as would authorise a reversal of the judgment.— After the verdict was returned by the jury, a final judgment was rendered against the *defendants,* for the amount of the damages assessed by that verdict. By our statute, the judgment by default is a final one, without a writ of inquiry, when the action is founded on a bond or note, for the payment of a sum certain ; and, in such case, the Clerk is authorised to calculate the interest. It certainly can not constitute error for a jury to ascertain the damages, instead of the clerk. Nor is it at all material, that an interlocutory judgment by default, with an order for a writ of inquiry, should precede the impanneling of the jury. This interlocutory judgment and order, are altogether formal ; no writ of inquiry, in fact, issues, but a jury is sworn, of those in regular attendance at the term, to assess the damages. Substantial defects, only, can be reached in this Court, and not formal ones : and there being nothing substantial in this objection, it cannot be sustained.

The important objection taken to the proceedings below, is contained in the bill of exceptions, by which it appears, that the plaintiffs in error offered to prove by parol, after introducing a deed of trust, such as is

described in the second plea, that it was agreed, before the execution of the deed, that upon its execution, Brown should be discharged from all further liability on account of the note upon which he is sued in this action. This evidence was rejected by the Court, on the ground, that it contradicted the deed.

It is insisted by the counsel for the plaintiffs in error, that the agreement to discharge Brown, was entirely distinct and independent of the one comprised in the deed, and that the parol evidence would only have been concurrent with, and not in opposition to the deed.

I can not perceive in what way the parol agreement to discharge Brown, can be considered independent of the contract embraced by the deed. According to the testimony which was offered and rejected, the execution of the deed was the only consideration for the agreement to discharge Brown.— A naked agreement, without consideration, is not obligatory. Therefore, had it been proved, that Maltbie agreed to discharge Brown without any equivalent, this would have been a *nudum pactum*, which could not have been enforced; and, its being sealed, would, under our statute, make no difference. The discharge of Brown, then, was not an independent agreement, but a part of the consideration for the execution of the deed.

The question, therefore, arises, could this consideration, which was not expressed in the deed, be proved by parol?

The only consideration stated in the deed, is that of securing the debt specified in the note sued on; and the receipt of one dollar, from the trustee.

On a slight examination, there appears to be some

conflict in the authorities, with respect to the admissibility of proof of any other consideration, than the one stated in the deed, unless the instrument does not specify any consideration, or that it was executed for other considerations, besides those specified in it, though probably a minute investigation will show, that no such discrepancy exists.

In Virginia, it appears to be the rule, that where the consideration expressed in the deed is one dollar, or five dollars, or such inconsiderable amount, as to show that it evidently was not intended to state that which had really been paid, evidence may be introduced to prove that which had really passed;[a] and this certainly should be permitted, because it is, in fact, as if no consideration were expressed. In that State, also, where reference is made to a consideration without specifying the amount, as where a mortgage or deed of trust is executed in consideration of a debt due from A, to B, the sum due may be proved by evidence *aliunde*, either parol or written—see the case of *Duval* vs. *Bibb*;[b] and it is an universal rule, that if a deed be assailed as fraudulent, the real consideration may be proved by parol, to show that it was fair and *bona fide*, or the reverse;[c] or when the interest of persons not parties nor privies to the instrument, is involved, they are in no way bound by the stipulations or considerations expressed in the deed. It is a general principle, however, that the parties to a sealed instrument can not show a different consideration from the one expressed in it, where, upon the face of it, there appears to have been no other. In Starkie on Evidence, (4th vol. 1004) this language is used—" if one specific consideration be

[a] See 1st Randolphs Rep. 219.

[b] 4 Hen. & Munf. 113.

[c] 4 Starkie Ev. 1001.

alone mentioned in the deed, no proof can be given of any other, for this would be contrary to the deed; for where the deed says it is in consideration of such a particular thing, it imports the whole consideration and negatives any other." This rule prevails universally, in England—see *Stratton* vs. *Rastall*.[a]

The case of *The King* vs. *Scammonden*,[b] has been cited by the counsel for the plaintiffs in error, to show the contrary; but it has not that effect, because, although parol evidence was admitted to prove that a greater consideration passed than the one expressed in the deed, it was not done by one of the parties; the contest there being with regard to the settlement of a pauper.

In New York the same principle obtains—see *Schermerhorn* vs *Vanderheyden*;[c] and, it is believed, in all the States.

The case of *Brigham* vs. *Rogers*,[d] is in point, and proves the prevalence of the rule in that State. In that case, the defendant had demised to the plaintiff, a certain tenement in Boston, by lease under seal, for the term of three years, and for a certain rent reserved.

The plaintiff offered to show, by oral testimony, that before the lease was executed, the defendant being about to repair the said tenement, and the plaintiff thinking of hiring the same, on a suggestion that the water was of a bad quality, and deficient in quantity for the uses of a stable, as which the tenement was intended to be occupied; the defendant declared, that he expected to finish the repairs by the 1st of January thereafter, that he would repair the pump, and that the water would be good, and that there would be enough of it.

[a] 2d Term Rep. 366.

[b] 3d Term Rep. 267.

[c] 1 Johns. Rep. 139.

[d] 17 Mass. Rep 571.

BROOKS and BROWN vs. MALTBIE.

The plaintiff offered further to prove, that afterwards, at the time of executing the lease, he being still apprehensive that the water would not answer his purpose, stated this to the defendant; who said, that the water would be good, and that there would be enough of it, and if not he would make it so.

The plaintiff stated further, that he should prove, that although the pump was put in repair, before he took possession, there was a great deficiency of water, and that it was not good; so that he had been put to great trouble and expense in bringing water from a well in other premises, for the use of the horses which had been put up at his stable; and that on account of this difficulty his custom and business were impaired.

A non-suit was directed, and a motion to set it aside was overruled by the Supreme Court of the State.

*Putnam*, Justice, who delivered the opinion of the Court, said—"if the contract, which the plaintiff proposes to prove, is altogether independent and collateral to the lease which the parties have made and sealed; the testimony ought to have been received: on the other hand, if it can not stand alone, but is to be considered as a part of the bargain, which the parties reduced to writing, the nonsuit ought to stand.

" It is not very easy to determine, whether the cases of this kind come within the rule, or the exception to the rule, as now stated. But when that is ascertained, the result to be deduced is clear. In the case before us, there is no ambiguity in the writing, and no suggestion of fraud. It seems to us, that we might as well, permit the tenant to prove that the landlord was to build another stable, or make any

other additions to the demised premises: as to permit this supposed personal agreement to be enforced. If we should come to that result, it would seem to be but a fair and an equivalent counterpart to the rule, to permit the landlord to prove that the tenant was to make payments, or perform services, in addition to the stipulated rent; and thus it would happen, that a written contract would afford no security or certainty."

In *Bayard* vs. *Malcolm*,[a] Chief Justice *Kent* said, "the contract being reduced to writing, excluded all *anterior* verbal negotiations and promises, as being resolved into the writing; which is the consummation and the only evidence of the agreement of the parties."

[a 1 Johns. Rep. 467.]

Let these doctrines be applied to the case at bar. If "all anterior negotiations and promises" are excluded, is not the "promise" or agreement, that Brown should be discharged from further liability on the note, necessarily excluded? And suppose we permit proof to be made of this fact, what is to prevent Maltbie from introducing evidence, provided he could do so, that there were other debts intended to be secured by the deed, in addition to the one expressed on the face of it; and thus entitling himself to the whole amount the property might sell for, although double that of the debt specified in the deed.

Such a construction would effectually destroy the superiority of written, over *parol* testimony, and place them on a perfect equality. The frail memory of man would be resorted to, to add to, or vary the most solemn obligations or covenants, and that most salutary rule of evidence which determines the con-

tracts of parties by their deeds, would no longer exist among us.

Parol evidence has always been admitted to prove a subsequent alteration of a written agreement.— But this does not conflict with the foregoing rule.— The contract is admitted to have been such as is expressed in the writing, but the proof shows the substitution of another, in part or in whole. This is nothing more than oral evidence, that the original contract has been discharged, and could no more be rightfully rejected, than proof of payment, or other performance of the stipulations. Receipts have been exempted from the operation of the general rule, and they are held to be open to explanation.

It has also been held, that the indorser of a note, *indorsed in blank*, in an action by the indorsee, against him, could prove by parol, that the indorsee received the note, under an agreement, that he should not be responsible to the indorsor. See *Hill* vs. *Ely*[a] - *Field* vs. *Nickerson*[b]—*Cummings* vs. *Fisher*.[c]

So in an action by the assignee, against the assignor of a sealed note, to recover back the consideration paid on the assignment, parol evidence was held admissible on the part of the defendant, to prove, that at the time of assigning the note, the plaintiff agreed to put it immediately in suit, and to take it at his own risk. See *Mehelm* vs. *Barnet*[d]—*Storer* vs. *Logan*.[e]

It is probable, however, that the Court would not give such latitude to indorsers—as it has already decided, in the case of *Somerville* vs. *Stephens*,[f]* that af-

[a] 5 Ser't & Rawle.363
[b] 13 Mass. R. 139
[c] Anth. N.P 4
[d] 1 Coxe, 86
[e] 9 Mass. R. 55.
[f] Stew.—

*NOTE.—The writer of this opinion, admitted the evidence in the Circuit Court It was there proved, that demand was made of the maker, and notice of non-payment given to the indorser, under this contract, one year after the note matured. The judgment was reversed in this court.

ter an assignment of a note, from A to B, which was filled up in the usual way, at the time it was made, oral evidence could not be received, to prove, that it was agreed between the parties, when the indorsement was made, that the indorsee should not demand payment of the maker, for one year after the maturity of the note.

The deed of trust, in this case, however, so far from coming within any of the foregoing exceptions, is one of those instruments, which are always executed with the utmost solemnity, and is completely embraced by the rule.

The judgment, therefore, should be affirmed.

SAFFOLD, J.— The action was assumpsit, brought in the Circuit Court of Jefferson County, on a promissory note, for one thousand four hundred and forty-four dollars and seventy cents, due the first of November, 1824, signed by the present plaintiffs, J. W. Brooks and John Brown, who were defendants below, where Maltbie, as payee, was plaintiff. To the declaration, Brooks filed no plea, nor made any defence. Brown filed two pleas: first, the general issue; second, a special plea, averring, he signed the note merely as security, without any consideration, as to him; that, afterwards, on the 20th February, 1826, an agreement was made by Maltbie, with him, that if he (Brown,) would execute a deed of trust, upon certain real estate in the town of Elyton, to secure the payment of the note, the same should operate as a full discharge to him. That, pursuant to the agreement, he executed the deed, and refers to the same, as being on file, in the clerk's office, of the Jefferson County Court. That the real estate, so

conveyed, was afterwards, on the 16th July, 1823, sold, for the benefit of Maltbie; and that the land, at the time of the conveyance, was worth more than the note, together with the interest.

To this plea, Maltbie replied, denying the plea, with conclusion to the country — upon which issue was joined.

Upon the trial before the jury, the defendant, Brown, proceeded with the proof of his special plea, shewing he was only the security of Brooks in the note; that the agreement, as averred, for the execution of the deed of trust, was made, and he was to be no farther bound, after making the deed. He then produced the deed, duly executed, between said Brown, of the first part, J. Thompson of the second, and Maltbie, of the third part. It recited, that Brown was indebted to Maltbie, in the aforesaid sum, specified in the note; and, being desirous to secure the payment, "according to the legal effect of the same," the indenture witnessed, " that, for and in consideration of the premises, and also, for the further consideration, to the said Brown in hand paid, by the said J. Thompson, of one dollar," he, said Brown, executed in due form, the deed, for the real estate, embracing several town lots, to said J Thompson, his heirs, &c. forever, with a general warranty of title. But which deed was declared to be upon trust, never the less. That Thompson, the trustee, should permit Brown to remain in quiet possession of the lots, and take the profits thereof, until default should be made, in the payment of the amount of the note and interest, in whole, or in part, on the first day of ———, 1827; and then, on the further trust, that the trustee should, so soon as he might deem proper, or be

requested by Maltbie, sell the lots or parcels of lands, or such parts as might be necessary, to the highest bidder, for ready money, at auction, on due notice given. That of the money arising from the sale, after deducting the expenses, he should pay to Maltbie or order, the said sum of one thousand, four hundred and forty-four dollars and seventy cents, in the aforesaid note specified, with interest thereon, and the balance, if any, he should pay to the said John Brown, his heirs," &c. But, if the whole of the sum should be paid off, and discharged to Maltbie, on or before the day mentioned, so that no default should be made, in the payment, then the deed to be void : otherwise, in full force.

Parol proof having been made of these facts, the plaintiffs' counsel moved the court to reject the parol evidence, because it was inconsistent with the terms of the deed. The motion was sustained, and the parol agreement excluded from the jury. After which verdict and judgment were given in favor of Maltbie, against both defendants.

Of the various causes assigned for error, two points are mainly relied on, by the plaintiffs, and which only, are deemed worthy of discussion.

1. That a joint verdict and judgment, were rendered against both parties, when but one had pleaded.

2. That the Court rejected the parol evidence, as shewn, when the same was legally admissible.

1. On the first point, but little is necessary to be said. Brooks, as defendant below, having failed to plead, or make defence, the plaintiff was entitled to judgment by default, against him, which, by statute, would have been final, on computation of the amount,

by the clerk : the course taken, was less usual and formal ; but had no tendency to prejudice either defendant. Issues were to be tried against Brown the co-defendant, and a computation, by jury, of the amount due. The sum to be recovered in the joint action of assumpsit, must have been the same, and joint, against both.

The computation by the jury, was according to the course of the common law, and calculated to afford all the safety to the defendant, Brooks, and certainty in amount, that could be expected, in any other way. The usual difference in the oath to the jury, for an assessment of damages, on default, and for the trial of issues, is more formal than substantial.

In the latter case, it is generally necessary, besides trying the issue, that the jury also assess the damages, as in the former.

But, could the form of the oath be considered material, it may be presumed, (nothing appearing to the contrary,) that the jury were duly sworn, to try the issues as to one defendant, and assess the damages, as to the other. At any rate, the principle of decision on this point, recognised by this Court, in the case of *Castleberry* vs. *Pearce*,[a] is sufficiently broad, to sanction the course taken in this case.

[a] 2 Stewart & Porter, 141

2. Was the parol evidence of the agreement, legally rejected?

If the contract established by the deed, and that attempted to be shewn by parol, are to be considered in fact the same, and the two grades of evidence be found variant from each other, the latter was properly rejected.

The general rule is, that "where the terms of an

4 s & p. 15

agreement are reduced to writing, the document, itself, being constituted by the parties, as the true and proper expositor of their admissions and intentions, is the only instrument of evidence, in respect of that agreement, which the law will recognise, so long as it exists, for the purposes of evidence.[a]  See *Preston* vs. *Merceau,*[b] *Pitkins* vs. *Brainard.*[c]

But, even where a record or deed exists, which is *conclusive* upon the *parties,* it is not always conclusive upon all *points.*  "The parties to a written agreement are not, in general, precluded from proving facts, consistent with the agreement, although not expressed in the agreement."[d]

Again, it is said, as between the parties to a deed, or those who claim in privity, evidence is admissible, to show the purpose and intention of executing the instrument, provided it be perfectly consistent with the legal operation of the instrument and not inconsistent with its express terms.[e]

The case of *Milbourn* vs. *Ewhart and others,*[f] illustrates the principle.  The circumstances were, that a man, in contemplation of marriage, executed a bond to his intended wife, (the plaintiff,) conditioned for the payment of money, by the heirs or executors of the obligor, to the plaintiff, at the expiration of twelve calendar months after the death of the obligor.  To an action on the bond, against the heirs, at law, of the deceased husband, they pleaded the marriage, &c., and the plaintiff replied, the fact, that the bond was made, in contemplation of the marriage, and with intent, that, in case it should take place, and the plaintiff should survive her husband, she should have the benefit of the bond ; and it was ruled, that these facts, though not expressed in wri-

a 3 Starkie Ev.1001–2.
b 2 Bl. Rep. 1249.
c 5 Conn. R. 451
d 3 Starkie's Ev. 1046.
e 5 Term.R. 381

ting, might well be averred, being perfectly consistent with the bond.

It is also held to be an established rule, that a party may aver another consideration, which is *consistent* with the consideration expressed: yet, no averment can be made, contrary to that which is expressed in the deed. Where, however, a deed, after stating a certain consideration, adds "and for other considerations," parol evidence is admissible, to show what those other considerations were.—*Benedict vs. Lynch.*[a]

In the case of *Harvey vs. Alexandria,*[b] a bill had been filed by Harvey, a judgment creditor, to set aside, as voluntary and fraudulent, a deed, executed by Alexandria, the debtor. The considerations expressed, were "natural love and affection," and "one dollar." It was contended, against the validity of the deed, as against creditors, that proof of valuable consideration was inadmissible, being inconsistent with the deed.

The Virginia Court of Appeals remarked, in decision, "The real question is, whether a deed, purporting to be for *love and affection,* and for *one dollar,* and assailed, as being fraudulent as to creditors, can be supported by evidence, showing, that in addition to the one dollar expressed, full value was received by the grantor?" That, "the question may be simplified, by supposing the deed to have been between the same parties, and for the same purposes; and that the only consideration expressed in the deed, was the sum of *one dollar,* paid by the grantee. It could hardly be doubted, that the evidnce would be admissible in that case. Indeed, the principle of the objection made, by the counsel for the complainant,

[a] 1Johns.C, Rep. 370.
[b] 1Rand219

that the evidence would be inconsistent with the deed, does not apply to such a case."

Further, they say, "it is believed, to have been the practice, at an early period, both in England, and the United States, for deeds not to express the actual sum, but a nominal one only : and yet this Court has not seen a single case, in which it has been held incompetent to the party claiming under the deed, to aver and prove the sum really given."

In the earlier case, in the same Court, of *Epps et al. vs. Randolph,*[a] where a deed was expressed to have been made, *for and in consideration of the grantor's natural love and affection for his son, and, for his advancement in life,* which was impeached, as being voluntary and fraudulent, as to creditors; the question was, whether it was competent for the son to prove the true consideration to have been a marriage agreement, between the fathers of himself and his lady?

The Court held, that though the deed did not express the fact of its having been made in consideration of marriage, the party might aver and prove it, and be viewed as a purchaser, for a valuable consideration.

In *Duval vs. Bibb,*[b] it was also decided, that, in *equity,* either party to a deed, might aver and prove, against the other, or against a purchaser with notice, the true consideration on which the deed was founded, though a different consideration be mentioned therein; but a *bona fide* purchaser, without notice of the true consideration, could not be affected thereby.

Thus, it appears to have been the uniform practice, in the Virginia Chancery, to admit parol evidence, *to add to, or vary,* the *consideration* of deeds—especially

[a] 2 Call. 125

[b] 4 Hen. & Munf. 113.

in questions of fraud, even to resist the presumption of it.

Why the principle should be different on a mere question respecting the admissibility of *disinterested* evidence, is not obvious; nor do either of the cases expressly declare it to be so. In South Carolina the doctrine appears to have been sustained to about the same extent. It has there been ruled, that a *different* consideration from that expressed in the deed, cannot be shown in a Court of *law*, but that a *less or greater consideration of the same character* may be shown—*Garret* vs. *Stewart.*[a] In this case it will be observed, that the additional consideration, if indeed the question must be viewed in that light, is of the same character (valuable) of that expressed in the deed.

The principles of the foregoing cases are believed to be those which are most current in England and the United States; they are reconcileable with the general rule of evidence, which ascribes higher dignity and credit to written evidence, particularly to deeds, than to parol evidence—on the ground that the character of the consideration, whether *valuable* or *good,* and not the *amount* of either, is of the essence of the contract. But the case of *The King* vs. *Laindon.*[b] would appear to go even farther. There the question as to a settlement, was, whether the parties intended to contract as master and servant, or as master and apprentice; the written agreement was in these words—"I, J. M., do hereby agree with J. C., to serve me three years, to learn the business of a carpenter; the first year to have one shilling and two pence per day, the second year, to have one shilling and six pence per day," &c. In addition to this, J. C. was permitted to prove, at the trial, that at the

a 1 McCord 514.

b 8 T.R. 379

time of signing the agreement, he agreed to give J. M. the sum of three guineas, as a premium, to teach him the trade, and that he was not to be employed in any other work. The question, it is true, was not between the contracting parties. But the Court of King's Bench held, that the evidence being offered not to contradict a written agreement, but to ascertain an independent fact. it was admissible.—(See also R. vs. Shinfield[a]—Clarkson vs. Hanway.)[b] The principle has also been fully recognized, that it is competent for a party to show that a parol contract was made independently; that it was wholly collateral to and distinct from a written one made at the same time. "In such cases" (says Starkie, 3 vol. 1049) "the parol evidence is used not to *vary* the terms of the written instrument, but to show either that it is *inoperative* as an entire and independent agreement, or that it is collateral and irrelevant.— (See also *Jeffery* vs. *Walton*,[c] and *Johnson* vs. *Weed*.[d]

It remains to apply more particularly the foregoing principles of law to the case under consideration. Then what was the object of the parol evidence offered and rejected; what agreement or expression in the deed did it contradict or vary? It did not deny that the prior debt, for which the note had been given, was the consideration, nor did it contain any promise to pay the balance, if the property should sell for less. According to the literal terms and legal effect of the deed, it was a conveyance of the lots to the trustee, to secure to Maltbie the amount of the debt, or so much thereof as they might prove of sufficient value to pay. It recognized Brown as a mere security for the debt, and provided if the same should be otherwise paid, (either by the principal or security)

[a] 14 East 544
[b] 2 P. Wms. 203; 1 Ves. 128.
[c] 1 Starkies C. C. 267; 2 Eng. Com Law Rep's 358.
[d] 9 Johns. Rep. 310.

before the day appointed for the payment, the deed should be void, otherwise in force, and the lots should be sold, by the trustee, and the proceeds, or if more than the debt, the amount thereof, should be applied in satisfaction of the same, and the excess paid over to Brown. Not a word is expressed respecting the balance of the debt, in the event of a sale for less than the amount. The deed contains no covenant to pay one cent in any other way beyond the proceeds of the lots. Hence there could have been no inconsistency between the deed and any parol agreement respecting any contingent *balance.* Had the debt been but then created and to the same amount, and no other security been taken for it, or other contract, the proceeds of the lots would have been all that could have been recovered on the contract in any way. Chancery would have been incompetent to decree payment of the balance, nor could any action at law have been maintained for it, because there was no covenant or agreement to pay it in any other way, or in any other event than that the property should sell for the amount; and the omission to provide any other remedy, would have implied an understanding that there should be no other. The doctrine is considered equally applicable to mortgages and deeds of trust.—See *Dunklin* vs. *Van Buren* and others;[a] *Perry* vs. *Barker;*[b] *Dashwood* vs. *Bluthway;*[c] *Drummonds adm'r.* vs. *Richards*[d]*

The execution of the note in 18_4, by Brooks and Brown, and of the deed of trust by the latter, alone, in 1826, were separate and distinct contracts. The latter did not disqualify the parties from making, at

[a] 3 Johns. Ch. R. 330
[b] 13 Vesey 198.
[c] 1 Eq Cas. Abr 317.
[d] 2 Munf 337.

---

* See Hunt *vs.* Lewin and Wyser, in this volume.

the same or any other time, any conditional or collateral agreement, in writing or by parol, respecting any contingent or certain balance of the debt, and from the nature of the transaction it is evident there must have been some such.

Without some other agreement, what could have been Brown's motive, for binding himself more strongly and pledging his property for payment of a *security debt?* Unless there was some relaxation of his former responsibility, it is unreasonable to presume he would have given the additional security—even the deed of trust, would appear to want an adequate consideration, to sustain it; as Brown's person and other property would have been in no less peril from the debt, than before. He could derive no advantage, nor would Maltbie sustain any loss or injury, or be bound to submit to any delay, in the collection of his debt, in consideration of his better security.

If it be presumed that longer forbearance on the debt, was the inducement, or part consideration for the deed, no evidence of such agreement appears in the deed. Admitting that the note was due before the execution of the deed, and that the latter appointed a still later day, for payment under it, by sale of the property; yet, if there was no contract to the contrary, more than appears from the deed, Maltbie retained his remedy on the note, and was at liberty to harrass Brown, in his person and other property, at any time—as though the deed had not been given.

If there was, in fact, a parol agreement, on sufficient consideration, subsequent to the note, for longer forbearance upon it, such contract, according to a decision of this Court, would have been binding on the creditor.—See *Ferguson* vs. *Hill.*

BROOKS and BROWN vs. MALTBIE.

Then if a parol agreement for forbearance on the note at the time of executing the deed, or at any other time would have been valid, there is conceived to be neither law, justice or reason, why a similar agreement, to remit the contingent balance of the debt, should not be equally *operative.*

Suppose, instead of the trust conveyance, an absolute deed, for the same premises had been executed by Brown, to Maltbie, for and in consideration of the debt; or that a bill of sale, in the ordinary form, had been made between the same parties, for property of half, or less than half the value of the debt, expressing the consideration to be this entiredebt, or any part of it—then, that the conveyance, in either case, should have been delivered under a parol agreement, expressed between the parties at the time, that the same should constitute a full satisfaction from Brown, and entitle him to an entire discharge from the debt; would not such parol evidence, in connection with the deed, be admissible against the note? I hold that a contract of either kind, would be no less operative than payment in any other property— say in a carriage and horses, of half the value, but which were delivered and received, under a parol agreement, that they should be in full satisfaction : and if, in this latter case, an ordinary bill of sale should be given, regardless of the amount expressed, as the consideration, the effect would be the same.

The former decision of this Court, which is said to have influenced the Circuit Court decision, in this case, and which is now relied on, by the counsel for the defendant in error, involved circumstances distinguishable from this. That was the case of *Sommerville* vs. *Stevenson.* There the question was,

4 s. & p.             16

whether an indorsement on a note, could be directly controlled and varied in its legal effect, by evidence of a parol agreement to the contrary, expressed at the same time it was made? That parol contract or understanding, could not have been sustained, without contradicting the indorsement, and varying the liability of the indorser, from that which arose from the higher evidence, thereby destroying the effect of the writing.

The parol agreement here insisted on, is not inconsistent with the original existence of the debt, as expressed in the note; nor is it inconsistent with any covenant, clause, or expression, contained in the deed of trust: it denies to the creditor, no right, which he has, or can claim, under the deed—it says, take the full benefit thereof—the whole proceeds of the deeded property. But an event has occurred, for which no provision was made in the deed, concerning which it is perfectly silent: the property has sold for less than the original debt. A sale of the property was authorised by the deed, for the manifold purpose of paying to Maltbie the value thereof, or the amount of the debt; and in the event of an excess of proceeds, to cause so much to be refunded to the grantor; but it does not say, that any deficiency should be supplied. Nor is it a legal implication. If there was no contract to the contrary, the balance would have been recoverable on the note. But Brown offered proof, that as an inducement to his execution of the deed, and, in consideration of his doing so, it was contracted and agreed between the parties, that the execution thereof should operate as a full discharge to him, from the debt previously existing.

To the benefit of this proof, I think he was legally entitled; and that, in the rejection of it, the Circuit Court erred—for which the judgment ought to be reversed, and the cause remanded.